THE STATE OF OHIO *v.* OSBORN.
THE STATE OF OHIO *v.* MARTIN.

(Nos. 79-CR–B 1731 and 1732—Decided February 27, 1980.)

County Court of Montgomery County.

*Mr. Charles F. Geidner,* assistant prosecuting attorney, for plaintiff.

*Mr. Terry Timblin,* for defendant Osborn.

*Mr. Michael Ellerbrock,* for defendant Martin.

FROELICH, J.   The defendants are charged with violating R. C. 959.13, cruelty to animals, for acts and/or omissions allegedly occurring on a Zehring Road property (hereinafter, the farm) on or about November 7, 1979. Both defendants have moved this court to suppress evidence sought to be introduced by the prosecution because it was a product of illegal searches in that there were no search warrants or alternative constitutional justification for the searches.

The facts generally are as follows:

(1) On April 18, 1979, officers of the Humane Society (hereinafter, officers) went to the farm, knocked on the door,

found no one home and left a "warning notice." Certain observations of horses and dogs were made from the driveway, house, and while "wandering to the back."

(2) On June 15, 1979, officers, and others, went to the farm, knocked on the door, found no one home, and left a "warning notice." Observations were made and photographs taken of horses and dogs by going back in the yard, barns and kennels.

(3) On July 3, 1979, officers went to the farm, knocked on the door, found no one home and left a "warning notice." Observations were made by going to the barns and kennels and water was provided for the horses and dogs.

(4) On July 26, 1979, the officers had scheduled an appointment with defendant Osborn at the farm. Upon their arrival, Mrs. Osborn was not present, but the farm owners, defendant Martin and her husband, were. The officers and the Martins had a conversation of approximately ten minutes after which the officers left, as requested by the Martins.

(5) On August 15, 1979, the officers met defendant Osborn at a scheduled appointment at the farm. There was a conversation in the driveway and defendant Osborn allegedly consented to the officers making other observations of the horses and dogs.

(6) On November 6, 1979, at approximately 6:30 p.m., an officer went to the farm and with a flashlight examined the conditions present in the barns and kennels.

(7) On November 7, 1979, officers and others, went to the farm and examined the conditions present in the barns and kennels, took photographs, and examined the animals.

Stipulations by all parties for the purposes of the suppression hearing include (1) that no warrants were sought or issued on these or any other dates and (2) that the officers had probable cause on all the above dates to believe that a criminal violation over which they have jurisdiction was being violated.

The Fourth Amendment to the United States Constitution states:

"The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized."

The prosecutor, in his oral argument at the hearing, suggests that the Fourth Amendment is not applicable in light of the so-called open fields doctrine. *Hester* v. *United States* (1924), 265 U.S. 57; *Katz* v. *United States* (1967), 389 U.S. 347, 351, fn. 8. This doctrine, that the Fourth Amendment does not extend to sights seen "in the open fields" was recently reaffirmed in *Air Pollution Variance Board* v. *Western Alfalfa Corp.* (1974), 416 U.S. 861, and in the cases *sub judice* is very similar to the plain view exception to the warrant requirement, *e.g., Coolidge* v. *New Hampshire* (1971), 403 U.S. 443. Summarizing the holding in *Coolidge,* that which is viewed must be the result of a prior valid intrusion, must be viewed as a result of inadvertence and must result in probable cause that the item spotted in plain view is indeed evidence of a crime.

"Open fields" and "plain view" are actually justifications for a *seizure* since technically no *search* is involved. If a search is involved, a warrant is still necessary. "Incontrovertible testimony of the senses that an incriminating object is on the premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband,\*\*\*the police may not enter and make a warrantless seizure." *Coolidge supra,* at 468. Open fields and other places in open or plain view are not constitutionally protected areas. Land which, though privately owned, is left open to the community to view, traverse, and utilize is arguably not entitled to the same "reasonable expectation of privacy" as other areas. "A similar doctrine is also applicable to a police officer's intrusion onto the walk leading up to the door of a home when the officer wishes to ask for the cooperation of persons in a house". Saltzburg, American Criminal Procedure, 311 (West Publishing Company, 1980). This is especially true where, as herein, there are no indications such as posted signs or a closeable gate that suggest the driveway and porch are not impliedly open to public use. *E.g., Pistro* v. *State* (Alaska 1979), 590 P. 2d 884. The "plain view" doctrine has expressly been applied in such situations where the officer is not searching for evidence against the accused, but nonetheless is legitimately where he or she is and inadvertently comes across incriminating evidence. *Harris* v. *United States* (1968), 390

U.S. 234. *McCutcheon* v. *State* (Wyo. Sup. Ct. 1979), 26 Cr. L. 2393.

Related to this "plain view" doctrine, the state argues that R. C. 1717.13 authorizes the Humane Society to enter the property and therefore once they are on the property they may seize (observe) whatever is in plain view. However, the seizure (in this case the viewing and examination of the animals and their conditions) must be inadvertent. To extend the scope of a legitimate intrusion to the seizure of evidence that the officers knew in advance they would "find in plain view and intended to seize, would fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure." *Coolidge, supra,* at 471. Since the treatment and care of the animals is precisely the laudable purpose of R. C. 1717.13, it is hardly inadvertent that they are viewed. The statute may well provide a civil and/or criminal immunity to one acting pursuant to it or even, *arguendo,* a legitimization of an initial intrusion when, *e.g.,* narcotics are found in plain view, but it cannot serve as a legislative abrogation of the warrant requirement of the Fourth Amendment.

The state further argues that even if the Fourth Amendment were applicable, defendant Osborn, at least, does not have "standing" to raise an objection. That is, while the Amendment may be applicable in a certain case, only individuals with "standing," *i.e.,* those whose rights have been violated, may present the issue to a court. In *Jones* v. *United States* (1960), 362 U.S. 257, 263, the Court held that "[t]he possession on the basis of which petitioner is to be * * * convicted suffices to give him standing * * *." While this "automatic standing" rule has probably been modified by, *e.g., Simmons* v. *United States* (1968), 390 U.S. 377, and *Brown* v. *United States* (1973), 411 U.S. 223, any such modifications do not come into play where the defendants either allege proprietary or possessory interests in the premises searched and/or were charged with an offense that includes, as an essential element of the offense charged, possession of the evidence in question. In the cases *sub judice* both defendants own some of the animals who were observed. Defendant Martin owns the property on which they were observed, and defendant Osborn legally and with the knowledge of the Martins

kept her animals on this property. Therefore, both defendants have standing and this motion is properly before the court.

The state also argues that defendant Osborn, at least on one occasion, gave the officers permission to be on the property and showed them around. Effective consent must meet the "totality of circumstances" test outlined in *Schneckloth* v. *Bustamonte* (1973), 412 U.S. 218. Viewed under such test, the consent to search of August 15, 1979, was proved to be voluntary and not the product of duress or coercion. Equally clear from the law and evidence is that this consent was solely for that day and cannot be viewed as an open-ended consent to enter and search the property.

Since it was stipulated at the hearing that there was no search warrant, the state has the burden to showing an exception to the warrant requirement exists. The search is presumptively invalid and the evidence suppressed unless the state meets this burden by a preponderance of the evidence. *Lego* v. *Twomey* (1972), 404 U. S. 477; *United States* v. *Matlock* (1974), 415 U. S. 164.

Therefore, from the evidence presented at the hearing the court finds as follows:

(1) The Fourth Amendment is applicable to searches conducted by a dog warden appointed and authorized to act pursuant to R. C. 1717.01 *et seq. Burdeau* v. *McDowell* (1921), 256 U.S. 465. *Camara* v. *Municipal Court* (1967), 387 U.S. 523. *Coolidge* v. *New Hampshire, supra.*, and that the complaining witness and "searcher" in this case is such an officer.

(2) The Humane Society officer was legitimately on the drive-way and doorstep of the farm on April 18, June 15, July 3, July 26, and August 15, 1979, and anything inadvertently seen from those locations on those dates was not subject to a reasonable expectation of privacy and therefore is not subject to this motion to suppress and may be offered in evidence, if otherwise admissible. Likewise, observations from any off-premises locations are not suppressable.

(3) The Humane Society officer received effective consent on August 15, 1979, to extend her observations beyond the driveway and doorstep and may offer testimony as to these observations, if otherwise admissible.

(4) All other evidence is the product of a search without a warrant in violation of the Fourth Amendment and is sup-

pressed. *Mapp* v. *Ohio* (1961), 367 U.S. 643; *Wong Sun* v. *United States* (1963), 371 U.S. 471.

*Motions granted in part and denied in part.*