STATE of Utah, Plaintiff and Respondent,

v.

Wayne Neil HARRIS, Defendant and Appellant.

No. 18294.

Supreme Court of Utah.

Sept. 27, 1983.

Wayne Neil Harris, pro se.

H. Don Sharp, Ogden, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

Defendant Harris appeals his conviction for Production of a Controlled Substance, a third degree felony under U.C.A., 1953, § 58–37–8(1)(a)(i), on the ground that incriminating evidence against him was obtained in an illegal search by police officers in violation of the Fourth Amendment to the United States Constitution.

On June 27, 1981, Dee Knight, Harris's neighbor, called the mayor of their small farming community in Weber County, Utah, to report his observation of marijuana plants growing in Harris's garden. The mayor requested the Weber County Sheriff's Office to investigate the complaint, and Deputy Anderson and Utah Highway Patrol Trooper Jackson responded to the call.

Harris's property was separated from Knight's by a 20 foot wide driveway that ran the length of Harris's fenced-in front yard, and continued to the backyard through a gate. The home sat approximately 55 feet back from the front fence and 35 feet to the side of the driveway. In the backyard Harris had a horse barn, an equipment shed, a dog run and a hay barn in a fenced-in horse pasture. Viewed from the front of the property, marijuana plants, roughly 2½ to 3 feet high, were growing behind three rows of tomato and bell pepper plants which were in the rear of two rows of corn standing roughly chest high at that time of year. Mexican firebush had been planted parallel with the front of the hay barn and the hay barn obstructed the view from Knight's property.

When the officers arrived to investigate, Anderson met Knight at the front of his property. Knight pointed out the direction of the suspected marijuana as well as the area where Harris was then hoeing his garden. Anderson drove his car into Harris's driveway to about even with the front of the house. The gate into the backyard was open and one of Harris's trucks was parked in the rear of the driveway in front of the hay barn. Anderson stated that he walked into the backyard where Harris met him between the hay barn and the dog run, some 35 feet from where the marijuana plants were growing. Harris asked "Can I help you?" Anderson stated that he was there to check out a complaint, and asked whether it was true that Harris was growing marijuana. Harris, according to Anderson, replied "yes," he was. When Anderson asked if he could see the plants, Harris requested both men to leave his property. Anderson at that point told Harris that he

could see the marijuana plants from where he was standing. He returned to his car, called Detective Shupe to come, and drove his car further towards the rear of the driveway. According to Shupe who soon arrived, Anderson expressed some concern to him about whether he should get a search warrant or not, but Shupe made the decision to go in without a warrant because, as he stated in his report, "[a] search warrant was not obtained because the plants were visible to the reporting officers, both from the road and from Mr. Knight's yard." Both Shupe and Anderson admitted at trial that they were not able to identify the marijuana plants from those two locations, at a distance of some 175 feet, and that they became visible only after they had penetrated into the area of confrontation.

Anderson, without Harris's permission, took Shupe to show him the marijuana plants. Harris was placed under arrest, handcuffed, and the plants were seized. Two days later, while Harris was being arraigned in court, Shupe and other deputies returned to the residence armed with a search warrant. As Harris lived alone, there was, of course, no response at the front door. The police officers tried all doors and windows, found a basement window ajar, pried open a screen door, gained entrance to the residence by climbing in and executed the search warrant.

The crucial question on appeal, as stated correctly by the State, is whether or not the observations made by the police officers were lawful, and if they were, whether they justified warrantless seizure. We conclude that they were not, and that the seizure was unlawful.

■ Harris's principal contention is that Anderson's uninvited entry on his property to search for marijuana constituted an unlawful search and seizure. In determining the scope of the constitutional protection we begin our inquiry with the assumption that "the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amend-

ment protection. [Citations omitted.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." [Citations omitted.] *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967). Subsequent to the *Katz* decision much emphasis was given to the twofold requirement advanced in the concurring opinion of Harlan, J. at 389 U.S. 361, 88 S.Ct. 516, 19 L.Ed.2d 588 that the defendant must have a subjective expectation of privacy and that society is prepared to recognize that expectation as reasonable. The plethora of decisions relying on those two factors have been a source of never ending confusion, prompting one commentator to plead that it was time that the "broad diversity of privacy claims must be brought under one hat" and that "bright line" standards are needed. Note, 91 Yale L.J. 313 et seq. (1981). Historically, the right guaranteed under the Fourth Amendment was "a right of personal security against arbitrary intrusions by official power." *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576, reh. den. 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971), and that definition emerges most consistently from the varying interpretations by both federal and state courts: "The central purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by the government officials." *South Dakota v. Opperman,* 428 U.S. 364, 377, 96 S.Ct. 3092, 3101, 49 L.Ed.2d 1000, 1010 (1976), (Powell, J., concurring). See also *U.S. v. Dunn,* 674 F.2d 1093 (5th Cir.1982). "The considerations of privacy here envisioned are not predicated upon a general constitutional 'right of privacy' but upon a right to be free from certain kinds of governmental intrusions." *Wattenburg v. U.S.,* 388 F.2d 853, 858, n. 6 (9th Cir.1968). As the court in *Katz,* supra, noted, the "trespass" doctrine once enunciated in *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928) can no longer be regarded as controlling. What re-emerges, consistent with *Katz,* is the maxim of Justice Brandeis' *Olmstead* dissent which foreshadowed

the precept that government protects people, not places:

[The makers of our Constitution] conferred, as against the government, the right to be left alone—the most comprehensive of rights and the right most valued by civilized men. To protect that right, every unjustifiable intrusion by the government upon the privacy of the individual, whatever the means employed, must be deemed a violation of the Fourth Amendment.

*Id.* 277 U.S. at 478, 48 S.Ct. at 572, 72 L.Ed. at 956.

\*     \*     \*     \*     \*     \*

The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning, but without understanding.

*Id.* 277 U.S. at 479, 48 S.Ct. at 573, 72 L.Ed. at 957.

There are of course justifiable intrusions when the right to be let alone must yield to the right of search. *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), but as a rule that justification must be sanctioned by a judicial officer and not asserted in the discretion of a government official, because "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delinated exceptions." *Katz,* supra, 389 U.S. at 357, 88 S.Ct. at 514, 19 L.Ed.2d at 585. And the burden is on those seeking exemption to show the need. *Coolidge,* supra. Prior review, as one commentator put it, avoids the familiar shortcomings of hindsight judgment that may, in close cases, lead courts acting after the fact to rule against apparently guilty defendants. Note, 91 Yale L.J., supra. The intervention of a neutral magistrate not only guarantees a lawful search of a suspected offender, but in a larger sense it protects society against the erosion of those cherished rights that are still not taken for granted in many parts of the world. Courts do not enforce these procedural requirements to sanction the activities of one sin-

gle individual, but to assure all citizens those continuing fundamental rights.

Warrantless searches and seizures have been upheld under the exceptions referred to in *Katz,* supra. They include consent searches, *Washington v. Chrisman,* 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982); searches and seizures made in hot pursuit, *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); searches and seizures of contraband in areas lawfully accessible to the public, *State v. Shreve,* Utah, 667 P.2d 590 (1983), seizure of evidence in plain view after lawful intrusion, *State v. Romero,* Utah, 660 P.2d 715 (1983); searches and seizures incident to lawful arrest based on probable cause under exigent circumstances, *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *State, in interest of K.K.C.,* Utah, 636 P.2d 1044 (1981).

In the instant case the State contends that the search falls under several of the "jealously drawn" exceptions which make a search warrant superfluous. It denies that Harris had a justified expectation of privacy because the marijuana plants growing in his garden were readily visible to persons on neighboring lands. Having been informed by the neighbor, the State continues, the police officers had probable cause to believe that a crime was being committed and therefore had a legitimate purpose in walking onto Harris's property to further investigate. Once there, the contraband was in plain view, giving the officers the right to seize it, and such seizure was incident to a lawful arrest.

It is well established law that a government official does not engage in a search within the meaning of the Fourth Amendment if he observes incriminating evidence from a place where he has a right to be. And that right extends to driveways approaching the entrance of a home, front doors, and other open areas accessible to the public at large, generically gathered under the "open field" doctrine, *State v. Shreve,* supra. The State refers us to *United States v. Hersh,* 464 F.2d 228 (9th Cir.1972) where this rule was reaffirmed absent express orders from the person in possession against a possible trespass. It is that small qualifying phrase that renders the case inapposite here. Cases cited by the State from this jurisdiction are equally unpersuasive: *State v. Lee,* Utah, 633 P.2d 48 (1981) (police officer was walking towards the front door when he passed the defendant's camper in the driveway and observed the stolen property. Warrantless seizure was not objected to at trial level); *State v. Echevarrieta,* Utah, 621 P.2d 709 (1980) (marshal observed marijuana plants from driveway leading to house; therefore no expectation of privacy where plants were knowingly exposed to the public). Conversely here, the marijuana was growing some 175 feet away from a public thoroughfare behind farm buildings in the rear of Harris's property. Photographs and testimony alike conclusively establish that he went to great pains to camouflage his illegal crop. He interspersed it with tomatoes and bell peppers, ringed it with Mexican firebush, quite similar, at first glance, to marijuana, and screened it to the front with rows of corn. Accord *State v. Kender,* 60 Hawaii, 301, 588 P.2d 447 (1979) (marijuana was not in open view where defendant had surrounded it to shield it against discovery and police officers had to stand on each other's shoulders to make observation). From where the police officers talked to Knight they could not tell what the plants were. When Knight pointed out the area where he thought marijuana was growing, Anderson had probable cause to have a search warrant issued. But probable cause alone is never enough to search for and seize contraband without a warrant. If it were, the protection of the Fourth Amendment would be rendered a nullity and probable cause alone would make all warrantless searches per se reasonable. *Coolidge,* supra. Absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional, even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). See also U.C.A., 1953, §§ 77–7–2

and 77–23–5, making provisions for warrantless arrest, but not for warrantless searches. *Wattenburg v. United States,* supra (matching stumpcuts with treestumps stockpiled 35 feet away from lodge was unlawful without a search warrant, though probable cause existed); *State v. Hook,* 60 Hawaii, 197, 587 P.2d 1224 (1978) (visibility of contraband within constitutionally protected premises is not enough to justify entry and seizure without a warrant. "[T]here is no room in constitutional doctrine to dispense with a warrant as a needless formality.") *Id.* 587 P.2d at 1229. *State v. Daugherty,* 94 Wash.2d 263, 616 P.2d 649 (1980), cert. den. 450 U.S. 958, 101 S.Ct. 1417, 67 L.Ed.2d 382 (1981) (entry beyond access to home to talk to defendant who had blocked view of interior of garage in the back with truck was pretext to conduct exploratory search in hope of finding evidence).

We conclude that at the moment Knight informed the police officers where the marijuana was growing they had probable cause to have a search warrant issued. Veracity is generally assumed when the information comes from an "average citizen who is in a position to supply information by virtue of having been a crime victim or witness." Wayne R. LaFave, Search & Seizure, § 3.3 (1978); *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). The officers' ensuing actions must therefore be held fatally pretextual unless the emergent nature of the situation frees them from the warrant requirement. "Thus, one significant consequence of *Chimel* was that it highlighted the importance of the issue of when, if ever, a warrantless search of premises should be upheld on the ground that an emergency made resort to the warrant process impracticable." LaFave, supra, at § 6.5.

Nonetheless, the State contends that the contraband was seized incident to lawful arrest, and that the defendant is not disputing his arrest on appeal. Assuming, arguendo, without further addressing that issue, that the arrest was lawful, the State would still need to show exigent circumstances to render the warrantless seizure lawful. In support of its posture the State cites *State v. Folkes,* Utah, 565 P.2d 1125 (1977), cert. den. 434 U.S. 971, 98 S.Ct. 523, 54 L.Ed.2d 461 (1977) and *State v. Austin,* Utah, 584 P.2d 853 (1978). Both are distinguishable. In *Austin,* the defendant had discarded the evidence into a wastebasket, thus negating any expectation of privacy. In *Folkes,* the contraband could have easily been disposed of by the defendant and the seizure thus fell squarely within the exception of exigent circumstances discussed below.

*Chimel v. California,* supra, provides the rationale for the need for a search warrant in cogent words:

> Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. *Id.* 395 U.S. at 761, 89 S.Ct. at 2039, 23 L.Ed.2d at 693.

The underlying justifications for a warrantless search of an arrestee's person and the area within his immediate control are twofold: (1) to remove weapons the arrestee may use to resist an arrest or effect an escape, (2) to prevent concealment or destruction of evidence linking the arrestee with the crime. Neither situation obtained here. The defendant lived alone, the plants were well established in the garden, and there was no danger of their destruction, let alone their concealment. Furthermore, they were not within his immediate control where he was arrested. Both Anderson and Shupe admitted that they were not worried about the destruction of the plants and that they could have secured the premises and kept them under surveillance until a search warrant could have been obtained.

As an alternate exception to the need for a warrant, the State contends that the evidence was in plain view when defendant was arrested, and that the evidence thus seized was not within the pale of constitutional protection. That argument is without merit when we judge it against the undisputed testimony of Anderson on cross-examination:

Q. Now on your direct examination you testified that you went down the driveway to talk to Mr. Harris about the report; is that correct?

A. Yes.

Q. Isn't it also true that you went on the property and down there to search for and look for marijuana?

A. Yes.

Q. So, you went for two reasons; one, to talk to him and to search; is that right?

A. Yes.

Q. One of those reasons being to get close enough to try to identify something?

A. Correct.

Q. Now, Mr. Harris never gave you any permission to search did he?

A. No.

To accede to the State's construction of the plain view doctrine would be tantamount to ignoring the maxim that plain view never occurs until a lawful search (usually under warrant) is in progress, and may not be used by government officials to bootstrap themselves into an exploratory search until they find what they are looking for. "Any evidence will be in plain view, at least at the moment of seizure." *Coolidge,* supra, 403 U.S. at 465, 91 S.Ct. at 2037, 29 L.Ed.2d at 582. The "plain view" doctrine comes into play only where the observation made is postintrusive. Preintrusive observations merely give rise to probable cause. *State v. Lane,* 175 Mont. 225, 573 P.2d 198 (1977). Accord *State v. Osborn,* 63 Ohio. Misc. 17, 409 N.E.2d 1077 (1980) ("[t]o extend the scope of a legitimate intrusion to the seizure of evidence that the officers knew in advance they would find in plain view and intended to seize would fly in the face of the basic rule that no amount of

probable cause can justify a warrantless seizure." *Id.* 409 N.E.2d at 1080, citing *Coolidge,* supra; *People v. Pakula,* 89 Ill. App.3d 789, 44 Ill.Dec. 919, 411 N.E.2d 1385 (1980) (marijuana in fenced-in yard was visible from adjacent landowner, not from street; police action was planned warrantless seizure). Cf. proper procedure followed in *George v. State,* Tex.Cr.App., 509 S.W.2d 347 (1974) (anonymous call alerted police officer to possible contraband. Officer initiated investigation, observed marijuana from where he had a right to be, and obtained search warrant to follow up on initial observation).

In sum, we reject the State's theory on seizure of evidence based on the "open field" doctrine, as the officers were not where they had a legal right to be when they first identified the marijuana. Likewise, we decline the "plain view" doctrine, because the evidence was not discovered incident to a prior justified intrusion but was instead the result of an uninvited entry by which the police officers achieved "plain view." The State's theory on search and seizure incident to lawful arrest fares no better. According to testimony of the officers no exigent circumstances, as set out in *Chimel,* supra, existed. To paraphrase the *Chimel* court, the presence of a search warrant serves a high function and we shall not dispense with it as a mere formality.

Inasmuch as the initial search and seizure was illegal, all subsequent contraband was "come at by the exploitation of that illegality" and may not be used against the defendant. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). There is thus no need to address the other issues raised on appeal.

The defendant's conviction is reversed.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.