DECISION.
Early one morning Officer McCurley was parked in his patrol car watching on-coming traffic when he noticed one car passing others on the road. He registered the car's speed with his laser gun at fifty-three miles per hour in an area where the speed limit was thirty-five. As McCurley pulled out to stop the car, it turned into a nearby residential area. McCurley accelerated, kept the car within sight, and, when he was about ten feet behind the car, turned on his flashing lights, signaling the driver to stop.
But the driver did not stop. Instead, he drove another fifty feet down the residential street and turned into a descending driveway. McCurley followed the car down the driveway and watched as it stopped behind a house on a parking area next to a garage. The garage door opened, presumably from the use of an automatic garage-door opener, and the driver got out of the car.
McCurley called on his radio to report that he had made a traffic stop. He also admonished the driver to get back into his car. The driver initially ignored McCurley's request, but, after standing by his car for a while, he complied and sat back down in the driver's seat.
McCurley approached the driver, defendant-appellant Keith L. Eberhart. McCurley noticed that Eberhart exhibited several physical signs of intoxication. He smelled of an alcoholic beverage. His eyes were somewhat watery and bloodshot. He fumbled while looking for his driver's license in his wallet. His speech was slurred and he appeared disoriented. In response to McCurley's inquiry whether Eberhart knew why he had been stopped, Eberhart not only denied that he had been speeding, but also that he had been driving at all.
Suspecting that Eberhart might have been intoxicated, McCurley administered four separate field-sobriety tests. Eberhart performed poorly on the tests, so McCurley arrested him and drove him back to the police station. At the station, McCurley read Eberhart his Miranda rights and also requested that he take a breath test to measure the concentration of alcohol in his system. In making the request, McCurley warned Eberhart that, under Ohio's implied- consent law,[1] his refusal to take a breath test would result in an automatic six-month suspension of his driver's license. Eberhart complied and participated in the test. It indicated that his breath-alcohol content was .144, well over the prohibited level of .10.
Eberhart was charged with the allied offenses of driving while under the influence of alcohol[2] and driving with a breath-alcohol content greater than .10,[3] speeding,[4] and the unauthorized use of license plates.[5] Prior to trial, he moved the trial court to suppress the evidence associated with his arrest and to dismiss the charges against him, primarily because McCurley had no authority to arrest him on his own property. The court denied Eberhart's motion. He then pleaded no contest to the two alcohol-related driving charges.
Eberhart now raises a single assignment of error in which he argues that the trial court erred by denying his motion to suppress the evidence against him and to dismiss the charges. But he presents five separate issues in support of this assignment of error. Eberhart claims that (1) the federal constitutional protection against unreasonable seizure prohibited his warrantless arrest on his property for speeding; (2) he was never properly advised of his Miranda rights at his home, so his statements to McCurley and McCurley's observations concerning the field-sobriety tests should have been suppressed; (3) his arrest occurred within the curtilage of his home; (4) McCurley lacked the legal authority to advise him that if he refused to submit to the breathalyzer test, his license would be automatically suspended; and (5) the trial court's ruling established an improper standard for enforcement of traffic laws, specifically condoning a "Gotcha [sic] mentality" based on a "solely punitive" interpretation of the law. We overrule Eberhart's assignment of error and affirm the judgment of the court.
At a suppression hearing, the trial court is the trier of facts and is in the best position to evaluate the credibility of the witnesses and the evidence, and to resolve factual disputes.[6] Thus we will accept the court's findings of fact if they are supported by competent, credible evidence.[7] But then we must independently determine as a matter of law, without deference to the legal conclusions of the trial court, whether the facts demonstrate compliance with the applicable constitutional standard.[8]
As with many cases involving a series of events that culminate in the arrest of a suspect, careful analysis requires that we examine each step in the sequence. Thus we examine each event in turn to determine compliance with the applicable constitutional standard before we focus on the next step. In so doing, we overrule Eberhart's single assignment of error by addressing each of the issues that he advances, though not in the order that they have been presented.
There is no doubt that McCurley was authorized to commence a traffic stop when he saw a car traveling eighteen miles per hour over the posted speed limit and to continue pursuit, even onto private property.[9]
Eberhart insinuates that by watching for speeding cars at 2:30 in the morning, McCurley was in fact seeking a pretext to initiate a traffic stop in the hopes of discovering a drunk driver behind the wheel. Whether this allegation is true is irrelevant. The Ohio Supreme Court has clearly stated that "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop."[10]
But McCurley was unsuccessful in stopping Eberhart on a public street; otherwise this appeal would be somewhat routine. Instead, Eberhart pulled into a residential driveway and McCurley followed. McCurley admittedly had no indication at this point that Eberhart was intoxicated. McCurley had not seen him driving erratically, and he was not later charged with failing to stop when McCurley first signaled that he should pull over. The sole reason for the pursuit was to issue a citation for speeding. So the question that we address here is whether an officer may effect a traffic stop that begins on a public street and culminates on a residential driveway. On the facts of this case, we hold that he may.
Eberhart argues that the federal constitutional protection against unreasonable seizure prohibited his warrantless arrest on his property for speeding. He is wrong for two reasons. First, constitutional protections against unreasonable seizure do not uniformly apply to all private property. Second, Eberhart was not arrested for speeding — he was stopped for speeding. He was later arrested for driving while under the influence of alcohol.
The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their * * * houses * * * against unreasonable searches and seizures." Invasion of the sanctity of the home has been recognized as "the chief evil against which the wording of the Fourth Amendment is directed."[11] Thus, a presumption of unreasonableness attaches to all warrantless home entries, and "when the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut."[12] By contrast, a warrantless arrest in a public place, when based on probable cause, does not violate the Fourth Amendment.[13]
In this case, the parties agree that McCurly did not cross the threshold of Eberhart's house. Instead, Eberhart contends that the events took place within the curtilage of his home, which, by extension, should also be granted protection from a warrantless invasion. While constitutional protections may certainly extend to the curtilage of an individual's home,[14] the record in this case does not reflect that the events took place there.
The central inquiry in determining whether an area outside of the home itself should be treated as curtilage, and thus as if it were part of the home for purposes of a Fourth Amendment challenge, is `"whether the area harbors the "intimate activity associated with the `sanctity of a man's home and the privacies of life.''"[15] Four factors guide this analysis: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by.[16] Thus, the doorway to a residence,[17] a porch,[18] or the residence's driveway[19] may be considered a public place even though it is on the homeowner's property. But an attached garage may fall within the curtilage of the home.[20]
At the hearing on Eberhart's motion to suppress, Eberhart testified that he had gotten out of his car and had made it into his garage before McCurley ordered him back into his car in an apparent effort to control the traffic stop. Had the trial court so found, we might have a different result in this case. But the court believed McCurley when he testified that the entire exchange occurred on the driveway. With no evidence in the record that Eberhart's driveway was somehow hidden from public view so that he might enjoy there the same privacy as he would within his home, we hold that the traffic stop occurred in a public place. Thus, the Fourth Amendment's protection against a warrantless home invasion did not apply when McCurley stopped Eberhart for speeding.
But the state argues that, even if the traffic stop occurred within the curtilage of Eberhart's home, the warrantless seizure was justified. It is true that police officers who have probable cause to arrest a suspect may enter a home without an arrest warrant when exigent circumstances exist.[21] The state further argues that two of these exceptional, exigent circumstances would be applicable in this case: the "hot pursuit" exception, which is based on the proposition that a suspect may not defeat an arrest that has originated in a public place by the expedient of escaping to a private place,[22] and (2) the exception for "evanescent evidence," where a warrantless intrusion may be justified by the need to preserve the imminent loss of that evidence.[23]
Because we hold that the encounter between McCurley and Ebehart occurred in a public place for purposes of our Fourth Amendment analysis, we do not need to address the state's application of exigent circumstances to justify the encounter in order to resolve this appeal. We do note, however, that there is a certain split of authority in Ohio appellate courts in determining the type of crime to which these exceptions might apply. Specifically the United States Supreme Court has virtually precluded the application of these "exigent circumstance" exceptions when the underlying offense is "minor."[24] Thus, while some courts have concluded that an underlying felony offense is required,[25] other courts have concluded that the exceptions also apply to any criminal offense, whether felony or misdemeanor, punishable by incarceration.[26] But in our case, at the beginning of the detention, McCurley had probable cause only to issue a speeding citation. And despite the split of authority, it is clear that exigent circumstances, coupled with probable cause to issue a citation for a relatively minor traffic violation, do not justify a warrantless intrusion into a suspect's home or curtilage.[27]
Next Eberhart contends that when McCurley approached his car, Eberhart reasonably perceived that he was not free to leave and terminate the encounter, and therefore that he was under arrest and should have been given Miranda warnings. But because a traffic stop is relatively less coercive than the type of custodial interrogation for which Miranda
warnings are required, "persons temporarily detained pursuant to such stops are not `in custody' for the purposes of Miranda."[28] Nor typically must the police read a driver Miranda rights before conducting field-sobriety tests as part of a traffic stop.[29] But even if aMiranda violation had occurred, the nonverbal results of Eberhart's field-sobriety tests were not self-incriminating statements, and thus would not have been rendered inadmissible by a Miranda violation.[30]
Finally, Eberhart argues that once he had failed the field-sobriety tests and was arrested and transported to the police station where he was read the Miranda warnings, McCurley was not authorized to advise him that failure to submit to a breathalyzer test would result in an administrative six-month driver's-license suspension. Eberhart bases this unique argument on the location of the traffic stop and the subsequent arrest.
The implied-consent statute is applicable to "any person who operates a vehicle upon a highway or any public or private property used by the public for vehicular travel or parking."[31] If the driver refuses the test, then the officer may forward the driver's license to the registrar, accompanied by a sworn report that delineates the officer's "reasonable grounds to believe that, at the time of the arrest, the arrested person was operating a vehicle upon a highway or any public or private property used by the public for vehicular travel or parking."[32]
Eberhart believes that because he was arrested on a residential driveway, the statute did not apply to him. We hold that it did, and that McCurley properly so advised him,[33] since McCurley had identified Eberhart as the driver of the car that he had observed on a public road shortly before the arrest.
 Having addressed each of Eberhart's issues, we overrule his assignment of error and affirm the judgment of the trial court.
 Judgment affirmed.
Hildebrandt and Gorman, JJ., concur.
[1] See R.C. 4511.191.
[2] See R.C. 4511.19(A)(1).
[3] See R.C. 4511.19(A)(3).
[4] See Cincinnati Municipal Code 506-8.
[5] See Cincinnati Municipal Code 503-52.
[6] See State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972,982, citing State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583,584.
[7] See State v. Scott M. (1999), 135 Ohio App.3d 253, 257,733 N.E.2d 653, 655, citing State v. Rhude (1993), 91 Ohio App.3d 623,626, 632 N.E.2d 1391, 1393, and State v. Guysing (1993),86 Ohio App.3d 592, 594, 621 N.E.2d 726, 726-727.
[8] See State v. Karle (2001), 144 Ohio App.3d 125, 129, 759 N.E.2d 815,818, citing State v. Deters (1998), 128 Ohio App.3d 329, 714 N.E.2d 972, and Ornelas v. United States (1996), 517 U.S. 690, 116 S.Ct. 1657.
[9] See R.C. 2935.03(A)(1).
[10] See Dayton v. Erickson (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, syllabus, following United States v. Ferguson (C.A.6, 1993), 8 F.3d 385;State v. Woodrum (Nov. 20, 2001), Athens App. No. 00CA50, unreported;State v. Moeller (Oct. 23, 2000), Butler App. No. CA99-07-128, unreported.
[11] See United States v. United States Dist. Court (1972), 407 U.S. 297,313, 92 S.Ct. 2125, 2134.
[12] See Welsh v. Wisconsin (1984), 466 U.S. 740, 750,104 S.Ct. 2091, 2098.
[13] See United States v. Santana (1976), 427 U.S. 38, 42,96 S.Ct. 2406, 2409, citing United States v. Watson (1976), 423 U.S. 411,96 S.Ct. 820.
[14] See United States v. Dunn (1987), 480 U.S. 294, 300,107 S.Ct. 1134, 1139.
[15] Id., quoting Oliver v. United States (1984), 466 U.S. 170, 180,104 S.Ct. 1735, 1742, quoting Boyd v. United States (1886), 116 U.S. 616,630, 6 S.Ct. 524, 532.
[16] Id. at 301, 107 S.Ct. at 1139.
[17] See United States v. Santana (1976), 427 U.S. 38, 42,96 S.Ct. 2406, 2409; State v. Robinson (1995), 103 Ohio App.3d 490, 494,659 N.E.2d 1292, 1295, citing State v. Chapman (1994), 97 Ohio App.3d 687,647 N.E.2d 504.
[18] See State v. Lomak (Mar. 11, 1999), Franklin App. No. 98AP-708, unreported.
[19] See State v. Durch (1984), 17 Ohio App.3d 262, 263, 479 N.E.2d 892,893, citing State v. Osborne (1980), 63 Ohio Misc. 17, 409 N.E.2d 1077;State v. Hart (Dec. 23, 1997), Athens App. No. 97CA18, unreported.
[20] See Los Angeles Police Protective League v. Gates (C.A.9, 1990),907 F.2d 879, 885; State v. Cooper (Sept. 26, 1997), Greene App. No. 97-CA- 15, unreported; State v. Tyler (Nov. 29, 1994), Franklin App. No. 94APA04-492, unreported.
[21] See Welsh v. United States (1984), 466 U.S. 740, 749-750,104 S.Ct. 2091, 2097-2098, citing Payton v. New York (1980), 445 U.S. 573,583-590, 100 S.Ct. 1371, 1378-1382.
[22] See Santana v. United States (1976), 427 U.S. 38, 43,96 S.Ct. 2406, 2410.
[23] See Minnesota v. Olson (1990), 495 U.S. 91, 100,110 S.Ct. 1684, 1690.
[24] See Welsh v. Wisconsin (1984), 466 U.S. 740, 750,104 S.Ct. 2091, 2098.
[25] See State v. Scott M. (1999), 135 Ohio App.3d 253, 258,733 N.E.2d 653, 656, citing Cleveland v. Shield (1995),105 Ohio App.3d 118, 122, 663 N.E.2d 726, 728; State v. Davis (1999),133 Ohio App.3d 114, 121, 726 N.E.2d 1092, 1097, citing State v. Huff
(June 10, 1999), Highland App. No. 98 CA 23, unreported; State v. Banks
(Aug. 20, 1999), Hamilton App. No. C-980774, unreported.
[26] See Beachwood v. Sims (1994), 98 Ohio App.3d 9, 16, 647 N.E.2d 821,825-826; State v. Rouse (1988), 53 Ohio App.3d 48, 51, 557 N.E.2d 1227,1230; Middletown v. Flinchum (Dec. 18, 2000), Butler App. No. CA99-11-193, unreported; State v. Marlow (Feb. 28, 1996), Summit App. No. 17400, unreported.
[27] See Blanchester v. Hester (1992), 81 Ohio App.3d 815, 819,612 N.E.2d 412, 414-415; Middletown v. Flinchum (Dec. 18, 2000), Butler App. No. CA99-11-193, unreported. See, also, State v. Robinson (1995),103 Ohio App.3d 490, 497, 659 N.E.2d 1292, 1297-1298, citing State v.Sbarra (Apr. 10, 1992), Portage App. No. 91-P-2341, unreported, State v.Holderman (Jan. 20, 1992), Ross App. No. 1787, unreported, and State v.Petrosky (Mar. 27, 1991), Hamilton App. Nos. C-900264 and C-900265, unreported.
[28] See Berkemer v. McCarty (1984), 468 U.S. 420, 440,104 S.Ct. 3138, 3150; State v. Hemmer (May 25, 2000), Logan App. No. 8-99-20, unreported.
[29] See Mayfield v. Minello (Dec. 14, 2000), Cuyahoga App. Nos. 76464 and 78086, unreported.
[30] See State v. Henderson (1990), 51 Ohio St.3d 54, 57-58,554 N.E.2d 104, 108.
[31] See R.C. 4511.191(A).
[32] See R.C. 4511.191(D)(1)(c)(i) (emphasis added).
[33] See R.C. 4511.191(C).