THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* STEVEN PAKULA *et al.*, Defendants-Appellees.

Third District   No. 79-260

Opinion filed October 29, 1980.

Edward Petka, State's Attorney, of Joliet (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Morris W. Ellis, of Chicago, for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendants, Annette Pakula and her husband, Steven Pakula, were indicted by a Will County grand jury for the offense of possession of more than 500 grams of a substance containing cannabis. The cannabis was seized by the police from the defendants' back yard where it was growing. Prior to trial, the defendants moved to suppress the cannabis. The trial court granted defendants' motion to suppress, ruling that even though the cannabis was plainly observable from outside the premises of the defendants' home and yard, and the police could discern that it was cannabis from a location where they had a right to be, the seizure was illegal. The trial judge found that there was no consent given by the defendants for the seizure of the evidence, and in the opinion of the trial court, no exigent circumstances were present and no reason existed for the police not to get a search warrant. The State has appealed from the order suppressing the evidence seized pursuant to Supreme Court Rule 604(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)).

The issue presented for our review is: whether the seizure of the cannabis growing in defendants' back yard was unreasonable, consistent with the fourth amendment to the Constitution of the United States and its prohibition against unreasonable intrusion into a person's privacy.

The facts surrounding the seizure of the evidence were presented at the hearing on the motion to suppress by the police officers who were involved and the defendant Annette Pakula.

Officer Stahl testified that on the night before the arrest of the defendants and the seizure of the cannabis, another police officer, agent Drew Peterson, received a call from the Bolingbrook police dispatcher regarding a report of cannabis growing in the back yard of 124 Avondale Court, Bolingbrook, Illinois. At approximately 11:30 a.m. of the following morning Officer Stahl and Agents Peterson and Sullivan drove to 124 Avondale Court in Bolingbrook to verify the address and location. They then proceeded one block north to a street that runs north and parallel with Avondale Court to observe the defendants' back yard and to see if cannabis was growing there. Officer Stahl reported that they could see what appeared to be cannabis growing in defendants' back yard from their vantage point standing on the sidewalk in front of the house one

block north of Avondale Court. The defendants' entire back yard was surrounded by a steel chain link fence through which the officers could see. After observing the cannabis growing from a block away they decided to get a closer look, and they then entered upon the private property of an adjoining landowner. From this closer observation point the police observed three large cannabis plants growing with the tomato plants in the garden. The cannabis plants were staked and tied and obviously cultivated. After making these observations, all three then proceeded to the Bolingbrook Police Department to get uniformed policemen to aid them in approaching the house and seizing the cannabis. No one remained behind to prevent possible destruction of the cannabis. At least 30 minutes elapsed before the police returned to the Pakula residence with two uniformed police officers. Agent Peterson then went to the front door of 124 Avondale Court with the uniformed officers. After knocking on the door he allegedly informed Annette Pakula about the cannabis growing in her back yard. Mrs. Pakula was not then arrested. The officers entered the Pakula fenced back yard and seized the cannabis growing in the garden as well as searching and seizing some smaller cannabis seedling plants found growing in a container on a patio. Only after the seizure was Mrs. Pakula arrested, and several days after that her husband Steven Pakula was arrested. Officer Stahl testified that he was not able to hear the entire conversation between Agent Peterson and Mrs. Pakula at the door. He admitted that no search warrant had been obtained and that they had returned to the residence intending to seize the cannabis.

Agent Peterson fully corroborated the version related by Officer Stahl's testimony. He stated that the tip that cannabis was being grown at the defendants' address had originated with the Bolingbrook police dispatcher on the evening before the seizure of the cannabis. He admitted that he lived in Bolingbrook within two or three miles of the Pakula residence but that he had not gone by or checked the tip out either on his way home from work in Joliet or on his way back to work the next day. Approximately 12 to 15 hours elapsed from the time Agent Peterson received the information about cannabis growing at 124 Avondale Court in Bolingbrook. Agent Peterson further admitted that Annette Pakula was not placed under arrest until after the seizure of the cannabis. He testified that after knocking on the door Annette Pakula appeared. He advised her that he was a police officer, that he had observed cannabis growing in her back yard, and that the police were going back into her yard to seize it. Agent Peterson also conceded that they did not obtain a search warrant for the Pakula back yard.

Annette Pakula testified in her own behalf. She admitted that she was present when the seizure was made, but stated that she had not given the

officers consent to enter her back yard or to seize anything. The State's first argument is that the seizure was valid under the open fields doctrine. (*Hester v. United States* (1924), 265 U.S. 57, 68 L. Ed. 898, 44 S. Ct. 445.) Under the theory of the open fields doctrine, incriminating evidence in plain view in an open field is not the subject of constitutionally protected privacy. As Justice Holmes stated in *Hester*, "the special protection accorded by the Fourth Amendment to the People, in their 'persons, houses, papers, and effects' is not extended to the open field." (*Hester v. United States* (1924), 265 U.S. 57, 59, 68 L. Ed. 898, 900, 44 S. Ct. 445, 446.) Illinois has recognized the validity of the open fields doctrine in plain view search and seizure cases. (*City of Decatur v. Kushmer* (1969), 43 Ill. 2d 334, 253 N.E.2d 425.) The State also relies upon subsequent cases decided under the open field theory to support the seizure of the cannabis in defendants' fenced back yard. (*Janney v. United States* (4th Cir. 1953), 206 F.2d 601; *Martin v. United States* (5th Cir. 1946), 155 F.2d 503.) We have examined these cases and find them to be factually distinguishable. In the *Hester* case the Supreme Court upheld the seizure of contraband liquor in an open field surrounding a house, but the evidence in that case showed that the defendants very clearly discarded the liquor bottles and their contents in flight thus abandoning any protected privacy in them. The *Kushmer* case merely dealt with a plain-view observation of an ordinance violation by city inspectors who did not enter upon the defendant's premises or seize anything, nor was either a warrantless search or any exigent circumstances in issue in that case.

In the *Janney* case the seizure of the illegal whiskey was made as an incident to a lawful arrest without a warrant, but the court properly concluded that "the legality of the arrest [in that case] is beyond question since the facts within the knowledge of the arresting officer and the actions of the defendant within his view abundantly justified the belief that a crime of the grade of a felony was being committed in his presence." (*Janney v. United States* (4th Cir. 1953), 206 F.2d 601, 604.) Similarly, in the *Martin* case the jug containing the illegal whiskey was also abandoned by the defendant in the plain view of the watching police when he eased the jug from the car and rolled it underneath the car as the lights of an unexpected oncoming car appeared.

In response to the State's argument that the cannabis was in plain view in an open field the defendants claim that the fenced back yard was within the curtilage of their residence. The protection of privacy afforded by the fourth amendment includes not only the interior of a person's house but has extended to open areas immediately adjacent thereto. The dividing line between immediate adjacent curtilage and an unprotected open field is very indistinct. The following statement has been set forth in

prior cases to determine if the search and seizure took place within the area of protected curtilage:

> " 'Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family.' " (*Wattenburg v. United States* (9th Cir. 1968), 388 F.2d 853, 857.)

In our view, the determination of the issue presented to us, the legality of the seizure, should not turn exclusively upon the ancient property law concept of curtilage. "[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his home or office, is not a subject of Fourth Amendment protection. [Citations.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v. United States* (1967), 389 U.S. 347, 351, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511.

■■ The Pakula back yard was completely enclosed by a fence and was not accessible to the general public. The officers gained entry to seize the cannabis by opening and going through the closed gate after Annette Pakula refused to consent to their warrantless entry. The Pakula's dog instinctively barked and confronted the police as intruders and had to be restrained. The facts of the present case establish that the defendants expected their back yard to be private and free from outside intrusion. Under the circumstances, we believe this expectation of privacy was reasonable and one that society is prepared to recognize.

■■ The seizure in this case was without a warrant. Searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the fourth amendment subject only to a few specifically established and well-delineated exceptions. (*Katz v. United States* (1967), 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514.) Those few exceptions are search by consent, search incident to arrest, and search based on probable cause where there are exigent circumstances which make it impractical to obtain a warrant. (*People v. Creed* (1975), 34 Ill. App. 3d 282, 339 N.E.2d 305.) While the record quite clearly proscribes any argument that the seizure was consensual, the State does argue that the seizure was incident to the arrest of Annette Pakula and therefore within an exception to the warrant requirement. We reject the State's argument. The arrest of Annette Pakula did occur in temporal proximity to the seizure of the cannabis. However, both Officer Stahl and Agent Peterson were very definite in their testimony that she was not arrested until after the seizure. This fact is undisputed and destroys the State's argument.

■■ The final exception available to the State to justify the warrantless seizure in the instant case is a search and seizure based upon probable cause, resulting from plain view where there are exigent circumstances which make it impractical to obtain a warrant. The trial court specifically found that no exigent circumstances were present. His finding is very strongly supported by the evidence. The police knew of the tip which led them to the cannabis in the Pakula back yard the night before the seizure. Agent Peterson lived in the Bolingbrook area within two or three miles of the Pakula residence and yet did not check out the tip either going home or back to work. It was conceded that his special duty police position in the Metropolitan Area Drug Enforcement detail was not subject to routine regular work hours. Not until near noon the next day did the police check out the tip. In all, approximately 12 to 15 hours elapsed from the receipt of the tip to the seizure, and the police failed to request a warrant. Even after investigating and viewing the growing cannabis from nearby through the fence, the investigating officers did not attempt to obtain a search warrant. No claim of exigent circumstances has been made, and the officers conceded that no one was left behind to prevent the destruction of the contraband when they left the area after viewing the cannabis to seek the aid of uniformed police. Indeed they felt assured that the evidence would not be destroyed because their investigation and observations had gone unnoticed by the occupants of the Pakula residence. We agree with the trial judge when he stated, "I can see no reason why the police couldn't have gotten a warrant had they desired without doing jeopardy. I think they could have gotten a warrant without endangering the contraband that they finally seized." The burden of proof is on the State to establish that all the elements of the plain-view exception to the warrant requirement are present, including the existence of exigent circumstances. (*Vale v. Louisiana* (1970), 399 U.S. 30, 26 L. Ed. 2d 409, 90 S. Ct. 1969.) The State failed to meet its burden in this case.

It has been suggested that viewing the contraband in plain view itself justifies the warrantless seizure of the evidence. (*Harris v. United States* (1967), 390 U.S. 234, 19 L. Ed. 2d 1067, 88 S. Ct. 992.) To the contrary "plain view *alone* is never enough to justify the warrantless seizure of evidence." (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 468, 29 L. Ed. 2d 564, 584, 91 S. Ct. 2022, 2039.) Stated differently, the warrantless intrusion into the defendants' privacy is not justifiable merely by a pre-intrusion plain-view observation. "Regardless of how suspicious the agents were that contraband was located on the premises, this fact alone does not justify a search * * * of [the] premises in the absence of a search warrant." (*Fixel v. Wainright* (5th Cir. 1974), 492 F.2d 480, 483.) We believe the same reasoning should apply to a seizure. Relying upon the

case of *Coolidge v. New Hampshire*, the Second District Appellate Court under analogous circumstances held in a well-reasoned very recent opinion that "the discovery of evidence in plain view must be inadvertent; and where police know the location of evidence in advance and intend to seize it, there is no legal inconvenience in obtaining a warrant for its seizure." (*People v. Rinaldo* (1980), 80 Ill. App. 3d 433, 436, 399 N.E.2d 1027, 1030.) We agree with the *Rinaldo* court's reasoning. Under the facts of the present case we cannot conceive of any cognizable inconvenience to the State in obtaining either a search or arrest warrant. The case before us is one of an admittedly planned warrantless seizure which cannot be justified on plain-view grounds.

■■ Under identical facts the courts of other States presented with the issue before us have concluded that contraband per se did not establish exigent circumstances to permit its seizure in a residential back yard without a warrant. (*Moorsman v. State* (Fla. App. 1978), 360 So. 2d 137; *State v. O'Herron* (1977), 153 N.J. Super. 570, 380 A.2d 728.) The doctrine of plain view is not an exception itself to the requirement that a search or seizure must be supported by a warrant issued by a judge upon a finding of probable cause. Plain view serves only to provide a means of satisfying the requirement of probable cause. Without the simultaneous existence of one of the true exceptions to the warrant requirement, plain view can not substitute probable cause, rightly thought to exist by a police officer, for the impartial decision of a neutral and detached magistrate capable of fairly determining whether probable cause truly exists.

> "[T]he requirement for a search warrant 'is * * * or should be, an important working part of our machinery of government, operating as a matter of course to check the "well-intentioned but mistakenly over-zealous executive officers" * * * .' " *People v. Rinaldo* (1980), 80 Ill. App. 3d 433, 434, 399 N.E.2d 1027, 1029.

Our reasoning is supported by the recent U.S. Supreme Court case of *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371. In *Payton* it was held that the fourth amendment prohibited police from making warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. In comparing an intrusion into a private home to conduct a search with the same intrusion to arrest the Supreme Court stated:

> "The two intrusions share this fundamental characteristic: the breach of the entrance to an individual's home. The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific

constitutional terms * * *." *Payton v. New York* (1980), 445 U.S. 573, 589, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1381-82.

The Illinois Supreme Court has recently interpreted the *Payton* case consistent with the views we express today. "The court limited itself to the question of whether probable cause is sufficient to justify the [warrantless] entries, holding that it is not." *People v. Abney* (1980), 81 Ill. 2d 159, 166, 407 N.E.2d 543, 546.

The trial court correctly found that no exigent circumstances existed to justify the warrantless seizure of evidence in the case at bar. The warrantless seizure of the cannabis was unreasonable and violative of defendants' fourth amendment rights. The trial court properly granted the motion to suppress the cannabis seized.

For the reasons stated the judgment of the Circuit Court of Will County is affirmed.

Judgment affirmed.

ALLOY, P. J., and SCOTT, J., concur.