THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DONALD P. BECKTEL, Defendant-Appellee.

Second District   No. 84—0509

Opinion filed November 1, 1985.

Dennis Schumacher, State's Attorney, of Oregon (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of Elgin, and John X. Breslin and Raymond L. Beck, both of State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

G. Joseph Weller and Marshall Hartman, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE STROUSE delivered the opinion of the court:

The State appeals from an order of the circuit court of Ogle County which suppressed as evidence a quantity of marijuana seized following a search of the house and garden occupied by defendant, Donald P. Becktel. The State challenges the trial court's ruling as manifestly erroneous, asserting that defendant lacked standing to contest the search and seizure, and that police conduct was proper under the "open fields" doctrine or under the theory of plain view.

On June 30, 1983, officers of the Ogle County sheriff's department executed a search warrant upon defendant's residence near Mt. Morris. The terms of the warrant authorized search of defendant's two-story house and the unattached garage adjacent to the barn, and directed seizure of "[a]ny green plantlike material commonly referred to as Cannabis." Upon executing the warrant, officers discovered nine potted marijuana plants growing in the basement of the residence. A bag of marijuana was also found in the basement, and some seeds and dried marijuana were found in the kitchen. Several marijuana plants were discovered in the garden. Defendant was thereafter charged by information with the unlawful manufacture of more than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1983, ch. 56½, par. 705(e)).

Defendant filed a motion to quash the search warrant and to sup-

press the evidence which had thereby been obtained. Among other things, defendant alleged that the garden was located in a secluded area on the lot, hidden from view from either the house or garage, and not within plain view of either location. Thus, search of the garden was alleged to be beyond the scope of the search warrant, requiring suppression of evidence found there.

Detective Sergeant Richard Wilkinson testified that following his search of defendant's house, he and his partner loaded their squad car with the items seized from the residence. At that time, the two detectives observed that the garage door was open. Upon observing various plants and roots inside the garage, they walked over to it and observed that this material was only shrubbery. The two detectives could not agree as to whether it was proper to enter the garage, and they walked around the side of the garage to examine the search warrant. They decided that they should not go into the garage and began walking back towards their squad car.

The garage was built across from a barn, which extended back toward the rear of the property. Sergeant Wilkinson testified that as the two detectives began walking from the side of the garage back to their car, they were able to observe a garden at the rear of the lot through a gap between the end of the barn and a fence. This gap was 10 to 15 feet in width and had apparently been left open to provide access to the garden. From a distance of about 20 yards, the detectives were able to see several potted plants in the garden, growing to a height of about two feet. They were unable at this time to identify the nature of the plants. The two detectives walked into the garden and saw that the plants were marijuana. They also observed growing marijuana.

Sergeant Wilkinson described the garden as behind a barn, which was 103 feet from the house. The garden adjoined an open field and was open on that side. He agreed with defendant's counsel that the garden's dimensions were approximately 74 by 32 feet. His testimony was inconclusive as to whether, in view of crops then growing in the adjoining field, the garden could have been seen at the time from the road running past the house. The garden itself was surrounded on two sides by a plank fence four to six feet high.

Defendant's wife testified that she and her husband rented the house in which they lived, that they used the garage, garden and sheds for storage, and that they did not farm the grounds. Their rental agreement was oral, providing that the Becktels would rent the house, use the garage, "[a]nd take care of the yard and the garden we use."

In a letter of opinion, the trial court suppressed the evidence found in the garden, but denied suppression of the material seized from the house. The State's motion to reconsider was denied, and this appeal followed.

■ In *Hester v. United States* (1924), 265 U.S. 57, 68 L. Ed.898, 44 S. Ct. 445, the Supreme Court established the doctrine that an individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers. This rule, commonly referred to as the "open fields doctrine," provides that an individual may not legitimately demand privacy for activities conducted out-of-doors in fields, except in the area immediately surrounding the home. (*Oliver v. United States* (1984), 466 U.S. 170, 80 L. Ed. 2d 214, 104 S. Ct. 1735.) In the present case, the State argues that the garden where the marijuana plants were discovered was sufficiently distant from the house, visible from the public way and accessible to the public through an unfenced area so as not to fall within the category of premises protected by the fourth amendment. Defendant counters that the State's reliance upon the open fields doctrine is misplaced, because the garden was within the area of close proximity to the house known as the curtilage.

■ It has traditionally been held that the curtilage, whether fenced or open, is an area protected from unreasonable searches and seizures. (*People v. Vaglica* (1968), 99 Ill. App. 2d 194, 197.) The test for determining the limits of the curtilage has been expressed in the following terms:

> "Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family." (*People v. Pakula* (1980), 89 Ill. App. 3d 789, 793, 411 N.E.2d 1385, 1388, quoting *Wattenburg v. United States* (9th Cir. 1968), 388 F.2d 853, 857.)

In other words, the curtilage is defined "by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." (*Oliver v. United States* (1984), 466 U.S. 170, 180, 80 L. Ed. 2d 214, 225, 104 S. Ct. 1735, 1742.) An area is not deemed to be within the curtilage solely because the property owner subjectively intended it to be protected from intrusion by outside persons, or that the governmental intrusion constituted a trespass at common law. *Oliver v. United States* (1984), 466 U.S. 170, 182-84, 80 L. Ed. 2d 214, 226-28, 104 S. Ct. 1735, 1743-44.

■ We find the trial court erred in finding defendant's garden to be within an area where there was a constitutionally justified right to privacy. The garden in this case was partially enclosed by fencing and was situated behind the barn and extended beyond it in such a manner that its unfenced side was separated from a public road only by an open cornfield, farmed by a third party. The barn itself was separated from the house by a driveway and was located 103 feet from the house. The garden was estimated as being 120 to 150 feet from the house, and there was no common enclosure surrounding the various structures. Defendant and his wife cultivated the garden and grew vegetables there for personal consumption, but the intensiveness of this use and the extent of its contribution to the domestic economy of the family were not shown.

The garden was not so closely adjacent to the house as to be within the dwelling's immediate surroundings, being separated from the house both by a driveway and by the barn. Certainly, the garden cannot be said to have been annexed to the residence, and there was no general enclosure by which the area of the home's immediate surroundings could be said to have been delimited. (Compare *People v. Pakula* (1980), 89 Ill. App. 3d 789 (yard and residence surrounded by chain link fence), with *United States v. Dunn* (5th Cir. 1985), 766 F.2d 880, and *People v. Lashmett* (1979), 71 Ill. App. 3d 429, *cert. denied* (1980), 444 U.S. 1081, 62 L. Ed. 2d 765, 100 S. Ct. 1034 (area searched separately enclosed from residence).) The State concedes a relationship between the garden and the domestic economy of the family, but we find that relationship was ill-defined and inadequate to establish, in isolation, that this open and comparatively accessible garden was the type of area so fundamentally related to a householder's private occupation of his dwelling as to fall within the concept of the curtilage.

Defendant cites a number of cases which we are not persuaded are relevant to this case. In *Rosencranz v. United States* (1st Cir. 1966), 356 F.2d 310, the object of the search was a barn, not a garden plot open on one side, and was linked to the residence by a driveway, which served as tangible evidence of a connection between the structures. By way of contrast, the instant case features no such visible link. In *United States v. Davis* (5th Cir. 1970), 423 F.2d 974, *cert. denied* (1970), 400 U.S. 836, 27 L. Ed. 2d 69, 91 S. Ct. 74, the court referred to the yard as being within the curtilage, but it was not called upon to adjudicate the applicability of the concept in this case or the limits of the curtilage in the setting of a farm home. (423 F.2d 974, 976.) In *United States v. Holmes* (5th Cir. 1975), 521 F.2d 859,

*aff'd by equally divided court* (5th Cir. 1976), 537 F.2d 227 (*en banc*), the court dealt with a closed structure within close proximity to the dwelling. Moreover, *Holmes* is not regarded as binding precedent even in the circuit where it was decided. (*United States v. Williams* (5th Cir. 1978), 581 F.2d 451, 454, *cert. denied* (1979), 440 U.S. 972, 59 L. Ed. 2d 789, 99 S. Ct. 1537.) Finally, in *People v. Pakula* (1980), 89 Ill. App. 3d 789, the court did not decide the case upon the issue of curtilage, but held that the area was one in which the defendant had a reasonable expectation of privacy. (See also *United States v. Williams* (5th Cir. 1978), 581 F.2d 451; 1 W. LaFave, Search & Seizure sec. 2.3(d), at 315 (1978).) However, this method of analysis is no longer viable in view of the Supreme Court's decision in *Oliver*, which specifically declined to permit a case-by-case adjudication of whether particular areas traditionally within the open fields might fall within the area in which an accused could have a reasonable expectation of privacy. 466 U.S. 170, 182, 80 L. Ed. 2d 214, 226, 104 S. Ct. 1735, 1742-43.

In *United States v. Williams* (5th Cir. 1978), 581 F.2d 451, 454, the court discussed the limits of the curtilage. It held that "as to buildings that are not encompassed by a fence that also includes the house, or perhaps a private or exclusionary one around them, the outer limits of the curtilage are defined by the walls of the remote outbuildings. Certainly such buildings give an added expectation of privacy for their contents, but we see none as to the area outside and beyond them." Applying this case, which was cited with approval in *Oliver*, leads to the conclusion that the garden in the instant case was not part of the curtilage. This result is consistent with *People v. Dasenbrock* (1981), 96 Ill. App. 3d 625, 628-29, where the court held that an unfenced and unmarked area behind a residence but visible from three of the four sides of the homeowners' property was not within the curtilage. The defendant's garden was not an area subject to the protection of the fourth amendment and the trial court erred in suppressing the evidence found therein.

The State asks us to consider the issue of defendant's standing to challenge the search and seizure of his garden. In the wake of *Rawlings v. Kentucky* (1980), 488 U.S. 98, 65 L. Ed. 2d 633, 100 S. Ct. 2556, and *United States v. Salvucci* (1980), 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547, the question of standing depends upon whether the accused had a reasonable expectation of privacy in the area searched. The question of standing therefore requires a case-by-case adjudication of an accused's interest in and relation to the property which has been the subject of a search and seizure. As noted above,

the United State Supreme Court has expressly disapproved of case-by-case adjudication of a defendant's reasonable expectation of privacy where open fields are involved. The court has determined that, as to open fields, there is no protectable privacy interest in these areas under the fourth amendment. (*Oliver v. United States* (1984), 466 U.S. 170, 182-84, 80 L. Ed. 2d 214, 226-28, 104 S. Ct. 1735, 1742-43.) Accordingly, the question of standing is not relevant here.

In view of our holding that the evidence was properly seized upon the "open fields" doctrine, we need not address the State's argument that the search of defendant's garden was justified by the plain view doctrine.

For the reasons stated, the judgment of the circuit court of Ogle County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

NASH, P.J., and REINHARD, J., concur.