THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOHN C. STORK *et al.*, Defendants-Appellees.

Fifth District   No. 5—89—0068

Opinion filed October 2, 1990.

WELCH, J., dissenting.

Darrell Williamson, State's Attorney, of Chester (Kenneth R. Boyle, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

James J. Gomric, of Belleville, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

The People of the State of Illinois appeal from an order of the circuit court of Randolph County granting the motion to suppress as evidence a quantity of cannabis seized following a search of the house and surrounding area owned and occupied by defendants, John C. Stork and Sonya M. Stork, husband and wife. In this cause, the People raise the issue whether the trial court erred in finding that the

area in which the cannabis was initially observed was within the classic curtilage of the dwelling and, therefore, protected from official intrusion. This court affirms.

The facts in this case are undisputed. On August 13, 1988, while at the Randolph County jail, Trooper James Spier of the Illinois State Police received an anonymous telephone call informing him that marijuana was being grown on defendants' property behind defendants' residence. Trooper Spier then notified Deputy Theis of the Randolph County sheriff's department, and the two of them went without a warrant to defendants' property in an attempt to verify the anonymous tip. The officers drove past the front of defendants' residence, but were unable to observe anything improper or illegal. The officers then drove about three miles east of defendants' property and parked their car. They walked through a wooded area until they came upon defendants' property. Both officers testified at the suppression hearing that while in the woods they smelled the odor of growing cannabis and continued to follow the scent. The officers continued toward defendants' residence until they were approximately 50 feet from defendants' garage, at which time they observed several marijuana plants. Defendants' home was located approximately 50 feet on the other side of the garage. The officers also observed a well-worn path and a hose running from defendants' property to the plants. Both officers testified that they knew they were on defendants' property at the time they observed the marijuana plants. The area in question was not visible from the public road in front of defendants' residence because of the garage and a brush pile on one side and surrounding woods on the other three sides.

On the following day, August 14, 1988, Deputy Theis filed a sworn complaint for a search warrant in which he explained the anonymous tip and the officers' walk in the wooded area which led to the discovery of the cannabis. The complaint did not mention that the officers had entered onto defendants' property, nor did it mention the odor of growing cannabis. On the basis of the complaint, a search warrant was issued. Deputy Theis returned to the area and met with Trooper Spier and MEG Agent Akins, who were waiting for him at defendants' residence. All three proceeded to search the residence and other areas authorized by the search warrant. The officers seized over 50 cannabis plants growing outside defendants' home. A search of defendants' home netted various drug paraphernalia and several more cannabis plants which were found growing in the basement. A warrant was then issued for defendants' arrest, after which both defendants voluntarily surrendered. Both defendants were charged with un-

lawful possession of cannabis in violation of section 4(e) of the Cannabis Control Act (the Act) (Ill. Rev. Stat. 1987, ch. 56½, par. 704(e)), unlawful manufacture of cannabis in violation of section 5(e) of the Act (Ill. Rev. Stat. 1987, ch. 56½, par. 705(e)), and unlawful production of Cannabis sativa plant in violation of section 8(d) of the Act (Ill. Rev. Stat. 1987, ch. 56½, par. 708(d)).

On January 10, 1989, defendants filed a motion to suppress the evidence obtained under the search warrant on the basis that the information on which the search warrant was issued was obtained during an illegal search of defendants' property. After a hearing on the motion, the trial court found that the officers had conducted an illegal, warrantless search on August 13, 1988, by entering the curtilage of defendants' home to observe the plants. The trial court refused to apply the open fields doctrine to this case because of its belief that the officers had traveled too close to defendants' home to fall within that category. Defendants' motion to suppress was, therefore, granted. The State subsequently filed a motion to reconsider, which was denied. This appeal followed.

The State challenges the trial court's ruling as manifestly erroneous and argues that the area in which the plants were initially observed was not within the curtilage of defendants' home and, therefore, was not protected from official intrusion. The State specifically argues that the cannabis was in plain view in an open field.

■■■ Under the open fields doctrine, incriminating evidence in plain view in an open field is not constitutionally protected under the fourth amendment. (*Hester v. United States* (1924), 265 U.S. 57, 68 L. Ed. 898, 44 S. Ct. 445.) As Justice Holmes pointed out in *Hester*, "the special protection accorded by the 4th Amendment to the people in their 'persons, houses, papers and effects' is not extended to the open fields." (265 U.S. at 59, 68 L. Ed. at 900, 44 S. Ct. at 446.) Illinois has recognized the validity of the open fields doctrine and plain view search and seizure cases. (*City of Decatur v. Kushmer* (1969), 43 Ill. 2d 334, 253 N.E.2d 425.) However, the protection of privacy afforded by the fourth amendment includes not only the interior of a person's house, but has extended to open areas immediately adjacent thereto. (*Wattenburg v. United States* (1968), 388 F.2d 853, 857.) The difference between an immediately adjacent protected area and an unprotected open field has usually been analyzed as a problem of determining the extent of the "curtilage." (388 F.2d at 857.) Whether the place searched lies within the curtilage is to be determined from the facts. (388 F.2d at 857.) In *United States v. Dunn* (1987), 480 U.S. 294, 94 L. Ed. 2d 326, 107 S. Ct. 1134, the Supreme Court set out four fac-

tors to be used in determining whether in search and seizure cases an area in question falls within the curtilage. The *Dunn* court stated that such questions should be resolved with a particular reference to

"the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." (480 U.S. at 301, 94 L. Ed. 2d at 334-35, 107 S. Ct. at 1139.)

The *Dunn* court noted that these four factors do not produce a finely tuned formula, but rather, should be considered as useful analytical tools with the primary focus in such cases being whether the area in question harbors those intimate activities associated with domestic life and privacies of the home and, thereby, protected by the fourth amendment. (480 U.S. at 300, 94 L. Ed. 2d at 334, 107 S. Ct. at 1139.) Applying these factors to the instant case, we cannot say that the trial court erred in determining that the area where the cannabis was found growing fell within the curtilage of defendants' home.

First, the record discloses that the garage is located approximately 50 feet behind defendants' house. The plants were growing in an area starting approximately 50 feet behind defendants' garage and ending approximately 75 feet behind defendants' garage. We believe that this relatively short distance supports an inference that the area was within defendants' own backyard and not in open fields. Second, while there was no fence enclosing the area, the State itself admitted in its brief that the area in question was not visible from the public road by virtue of the garage and a brush pile on one side and the woods on the other three sides. Third, an area 50 feet behind a person's garage and home is close enough to be considered one's own backyard which could be used for a number of family activities, including recreation or gardening. Fourth, defendants posted a "No Trespassing" sign at the front of their property near the driveway. The record discloses that nothing more should be necessary to prevent persons from observing what was in defendants' backyard, as it was hidden from view due to a garage and brush pile on one side and the surrounding woods on the other three sides.

In addition to this four-prong test, the facts also indicate that the officers only gained entry to defendants' property by parking approximately three miles down the road from defendants' property and hiking back through woods owned by another individual. The officers admitted that they were unable to see any cannabis prior to their entry on defendants' own land, only 50 to 75 feet behind defendants' ga-

rage. The officers claim to have smelled growing cannabis prior to their entry on defendants' land, but this fact was not made known to the judge who issued the warrant. The judge who issued the warrant was also not made aware of the fact that the officers had entered onto defendants' property before seeing the cannabis.

■■ The facts of the present case establish that defendants expected their backyard to be private and free from outside intrusion. We do not believe that the trial court erred in finding that the officers conducted an illegal, warrantless search on August 13, 1988, by entering the curtilage of defendants' home which was the basis for the warrant issued on August 14, 1988. Therefore, the trial court properly granted defendants' motion to suppress the cannabis seized.

For the foregoing reasons, the order of the circuit court of Randolph County is affirmed.

Affirmed.

HOWERTON, J., concurs.

JUSTICE WELCH, dissenting:

I dissent from the majority opinion because I do not agree that the area in which the cannabis was initially observed was within the curtilage of the dwelling. Instead, I believe the marijuana was observed in an "open field" and that the search warrant was properly issued based upon the officers' lawful observance of cannabis growing in an open field.

The extent of a dwelling's curtilage is determined by factors which bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself. (*United States v. Dunn* (1987), 480 U.S. 294, 300, 94 L. Ed. 2d 326, 334, 107 S. Ct. 1134, 1139.) As the majority points out, the question should be determined with particular reference to four factors: the proximity of the area to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by. *Dunn*, 480 U.S. at 301, 94 L. Ed. 2d at 334-35, 107 S. Ct. at 1139.

I believe the instant case is remarkably similar to *People v. Becktel* (1985), 137 Ill. App. 3d 810, 485 N.E.2d 474, *cert. denied* (1986), 476 U.S. 1143, 90 L. Ed. 2d 699, 106 S. Ct. 2254, in which the appellate court reversed a trial court's finding that a garden, located approximately 120 to 150 feet from the house and behind a barn, was

curtilage and therefore protected under the fourth amendment. The garden was surrounded on two sides by a plank fence four to six feet high, but on one side adjoined an open corn field. There was no common enclosure surrounding the various structures and the garden.

The appellate court found that the garden was not so closely adjacent to the house as to be within the dwelling's immediate surroundings. It was separated from the house by a barn and a driveway and was not annexed to the residence. This court found that the open and comparatively accessible garden was not the type of area so fundamentally related to the householder's private occupation of his dwelling as to fall within the concept of curtilage.

Similarly, in the instant case, I do not believe that the garden containing the marijuana was so closely adjacent to the house as to fall within its curtilage. The garden was approximately 100 to 125 feet behind the house and separated from the house by a garage. Thus, it was some distance from the house and cannot be said to be part of the householders' backyard. There was no fence or enclosure around the house and garden. There is no evidence in the record that the garden was used for any purpose other than the growing of marijuana, such as the growing of vegetables for home consumption or recreating. Finally, defendants had taken no steps to protect the garden from observation by people passing by. The garden was surrounded by woods on three sides, and by a shed and brush pile on one side. While the garden was not visible from the public road in front of defendants' house, it was visible from the woods behind the house and garden. Defendants do not argue that the woods behind the house also constituted curtilage, and the officers' presence in the woods did not violate defendants' fourth amendment rights under the "open fields" doctrine. *Oliver v. United States* (1984), 466 U.S. 170, 180, 80 L. Ed. 2d 214, 224, 104 S. Ct. 1735, 1742 (an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home).

Applying the four factors set forth in *Dunn* to the case at bar, I believe that the garden where the marijuana was found was not curtilage, but was an open field which was not protected by the fourth amendment. I believe the trial court's finding to the contrary was manifestly erroneous, and I would reverse its judgment suppressing the cannabis as evidence.